UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


FREDERICK LAMAR DIXON,

       Petitioner,

                               CASE NO. 2:11-CV-10816

   v.                        CHIEF JUDGE GERALD E. ROSEN
                              MAGISTRATE JUDGE PAUL J. KOMIVES

JOE BARRETT,

       Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.    *Presence of Deputies with Shackles (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    E.    *Judicial Bias (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    F.    *Failure to Disclose Identity of Informant (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . 18
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    G.    *Admission of Prior Convictions (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
         2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    H.    *Ineffective Assistance of Counsel (Claims IV & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . 24
         1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
         2.    *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
             a. Failure to Call Informant and King . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
             b. Failure to Properly Examine Pollard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
             c. Failure to Investigate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
         3.    *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    I.    *Evidentiary Hearing (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
         1.    *State Court's Failure to Grant Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . 32

_____

    [1]By Order entered this date, Joe Barrett has been substituted in place of Richard McKeon as the proper respondent in this action.

        2.      *Evidentiary Hearing in This Court* ........................................ 33
J.     *Recommendation Regarding Certificate of Appealability* ............................ 35
        1.      *Legal Standard* ......................................................... 35
        2.      *Analysis* ............................................................... 36
K.    *Conclusion* ................................................................... 37
III.      NOTICE TO PARTIES REGARDING OBJECTIONS ...................................... 37

\*     \*     \*     \*     \*

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

      1.    Petitioner Frederick Lamar Dixon is a state prisoner, currently confined at the Cooper Street Correctional Facility in Jackson, Michigan.

      2.    On April 2, 2008, petitioner was convicted of two counts of delivery of less than 50 grams of a controlled substance, MICH. COMP. LAWS § 333.7401(2)(a)(iv), following a jury trial in the Washtenaw County Circuit Court. On April 29, 2008, he was sentenced to concurrent terms of 3-10 years' imprisonment on each count.

      3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

     I.    NOTICEABLE DEPLOYMENT OF SECURITY PERSONNEL DURING A TRIAL IS A PRACTICE THAT IS SUBJECT TO CLOSE JUDICIAL SCRUTINY ON A CASE-BY-CASE BASIS. JUST BEFORE MR. DIXON TOOK THE WITNESS STAND TO TESTIFY ON HIS OWN BEHALF, TWO SHERIFF'S DEPUTIES CAME INTO THE COURTROOM CARRYING SHACKLES. DID THEIR PRESENCE DURING MR. DIXON'S TESTIMONY DENY HIM A FAIR TRIAL?

     II.    MRE 609 ONLY ALLOWS IMPEACHMENT WITH PRIOR CONVICTIONS OF DISHONESTY, FALSE STATEMENT OR THEFT. THE PROSECUTOR IMPEACHED ALIBI WITNESS HENRY DISHMON WITH PRIOR DRUG CONVICTIONS. DID THE PROSECUTOR

        COMMIT MISCONDUCT AND DEPRIVE MR. DIXON OF A FAIR
        TRIAL?

III.     MRE 609 PROHIBITS IMPEACHMENT WITH A PRIOR CONVICTION
        IF IT DOES NOT CONTAIN AN ELEMENT OF DISHONESTY OR
        FALSE STATEMENT OR IF MORE THAN TEN YEARS HAVE
        ELAPSED FROM THE DATE OF THE CONVICTION OR RELEASE
        FROM PRISON.   THE TRIAL COURT LET THE PROSECUTOR
        IMPEACH MR. DIXON WITH PRIOR CONVICTIONS THAT EITHER
        CONTAINED NO ELEMENTS OF DISHONESTY OR FALSE
        STATEMENT OR WERE OVER TEN YEARS OLD. WAS THE TRIAL
        COURT'S RULING AN ABUSE OF DISCRETION?

IV.     PROSECUTORS CANNOT GIVE PERSONAL OPINIONS ABOUT THE
        EVIDENCE IN THEIR ARGUMENTS.  MR. DIXON'S PROSECUTOR
        ARGUED THAT HE BELIEVED MR. DIXON'S ALIBI WITNESS WAS
        NOT A CREDIBLE SOURCE AND THAT HE BELIEVED MR. DIXON
        WAS NOT CREDIBLE. DID THE PROSECUTOR COMMIT
        MISCONDUCT AND DEPRIVE MR. DIXON OF A FAIR TRIAL?

V.     THE CUMULATIVE EFFECT OF SEVERAL MINOR ERRORS MAY
        WARRANT REVERSAL EVEN WHERE INDIVIDUAL ERRORS IN THE
        CASE WOULD NOT.  MR. DIXON HAS RAISED FOUR ERRORS IN
        THIS APPEAL.  EVEN IF THOSE FOUR ERRORS INDIVIDUALLY ARE
        NOT REVERSIBLE ERROR, DID THEIR CUMULATIVE EFFECT
        CREATE SUCH AN ATMOSPHERE OF UNFAIRNESS TO MANDATE
        REVERSAL?

Petitioner also raised a *pro se* supplemental brief, raising the following additional claims:

I.     DID THE CUMULATIVE EFFECT OF SEVERAL INSTANCES OF
        JUDICIAL BIAS AND JUDICIAL MISCONDUCT CREATE A HOSTILE
        ATMOSPHERE OF UNFAIRNESS AND THEREBY PIERCE THE VEIL
        OF JUDICIAL FAIRNESS?

II.     IS IT REVERSIBLE ERROR FOR THE PROSECUTION TO WITHHOLD
        THE FACT THAT AN INFORMANT EXISTED WHO COULD AND
        WOULD HAVE PROVIDED FAVORABLE TESTIMONY FOR
        DEFENDANT DIXON?

III.     DID ATTORNEY WILLMAN RENDER INEFFECTIVE ASSISTANCE OF
        COUNSEL AND WAS HIS ERRORS SO SERIOUS AS TO RENDER THE
        RESULT OF THE TRIAL UNRELIABLE.  DID ATTORNEY WILLMAN
        ERR WHEN HE FAILED TO TREAT DEFENSE WITNESS POLLARD

> AS A HOSTILE WITNESS WHEN HE TESTIFIED CONTRARY TO WHAT HE PURPORTED TO TESTIFY TO. WILLMAN FURTHER RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO INVESTIGATE THE POSSIBILITY OF THE EXISTENCE OF AN INFORMANT AFTER BEING TOLD THAT POSSIBILITY BY DIXON.
>
> IV.   DEFENDANT DIXON WAS DENIED HIS FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WHERE HIS APPELLATE COUNSEL REFUSED TO INTERVIEW HIM OR SEND A REPRESENTATIVE TO DO SO: AND WHERE SHE FAILED TO INVESTIGATE POTENTIALLY MERITORIOUS CLAIMS OF ERROR NOT REFLECTED IN THE TRIAL COURT RECORD, AND HAS REASON TO BELIEVE THAT FACTS IN SUPPORT OF SUCH CLAIM EXIST, WHICH IS REASONABLY LIKELY TO RESULT IN A DIFFERENT OUTCOME FOR DIXON.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Dixon*, No. 285637, 2009 WL 3323253 (Mich. Ct. App. Oct. 15, 2009) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal in the Michigan Supreme Court, raising the security personnel, informant, and two ineffective assistance of counsel claims that he raised in the court of appeal, as well as an additional claim that the court of appeals erred in denying his motion to remand for evidentiary hearing on his ineffective assistance of counsel claims. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Dixon*, 485 Mich. 1104, 778 N.W.2d 259 (2010).

5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on February 28, 2011. As grounds for the writ of habeas corpus, he raises seven claims: (1) denial of due process by presence of shackles in the courtroom; (2) judicial bias and misconduct; (3) suppression of the identity of an informant; (4) ineffective assistance of trial counsel; (5) ineffective assistance of appellate counsel; (6) improper denial of remand; and (7) improper admission of 30 year old crimes as impeachment evidence.

4

6.     Respondent filed his answer on September 7, 2011.  He contends that petitioner's second and seventh claims are unexhausted and procedurally defaulted, and that all of petitioner's claims are without merit.

7.     Petitioner filed a reply to respondent's answer on September 27, 2011.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from two sales of cocaine to an undercover officer.  The evidence adduced at trial is accurately summarized in respondent's answer:

> Detective David Ried works as an undercover detective with LAWNET, a law enforcement narcotics investigation unit for the counties of Washtenaw and Livingston. Petitioner sold cocaine to Detective Ried on two separate occasions. On February 22, 2007, Detective Ried called Petitioner and asked if he could buy some cocaine. Petitioner instructed Detective Ried to go Room 427 at a motel. Detective Ried went to the room and knocked on the door. Petitioner opened the door, let the detective into the room, and handed Detective Ried a baggie of cocaine. While in the room, Detective Ried recognized Joletta King. Detective Ried paid Petitioner $125 and left. Detective Ried testified that he had previously met Petitioner through a confidential informant. He also testified that because Petitioner used the name "Antar," he used a driver's license photo to confirm Petitioner's real name.
>
> Petitioner also sold drugs to Detective Ried on February 27, 2007.  Detective Ried again called Petitioner and asked to buy cocaine. Petitioner instructed the detective to meet him at a gas station. Detective Ried went to the gas station and parked next to a white Cadillac. Inside the Cadillac, an unidentified woman sat in the driver's seat and Petitioner sat in the passenger seat. Petitioner exited the Cadillac and entered the front passenger seat of Detective Ried's vehicle. Once inside, he handed Detective Ried a baggie of cocaine. Detective Ried paid him $125. Petitioner exited Detective Ried's vehicle and the parties went their separate ways.
>
> After the February 22nd sale, a LAWNET officer advised the Pittsfield Township Police that possible drug dealing was taking place at the motel where Detective Ried had purchased cocaine from Petitioner. The police were also told to look out for a white Cadillac. On February 23rd the Pittsfield Police watched the motel and observed a white Cadillac park in the 400 section of the motel. Because the driver of the Cadillac noticed the police as he got out of the car, the Pittsfield Police then turned the patrol vehicle around and parked across the street from the hotel, where they continued surveillance from the parking lots of a restaurant and business complexes. The police observed a lot of traffic going in and out of Room 427—the same room where Detective Reid had purchased cocaine from Petitioner the day earlier. The police also observed people exit Room 427, walk around to the

5

300 section of the motel, get into a car located at the 300 section, drive the car to the 200 section, enter Room 202, exit Room 202 only a few minutes later, drive the car back to the 300 section, walk back around to the 400 section, and then re-enter Room 427. During this time, the manager of the motel called in to report the unusual traffic.

Pittsfield Police then observed another person drive to the 400 section of the motel, enter room 427, come right back out, get into his car and drive off. Police stopped the car after observing a traffic violation and found crack cocaine in the person's possession. Shortly after this stop, the police stopped the white Cadillac after observing a traffic violation. The driver was Oscar Simms, who said he had rented Room 427 and was going to get some fast food. The Cadillac's VIN number was the same as the Cadillac that Petitioner was in during the February 27th drug sale.

At this point, Pittsfield Police decided to knock on the doors of Room 427 and 202. Police knocked on Room 427. The people inside would not open the door and told police that they had rented the room. The police consulted management to determine who had actually rented the room. Management informed police that Oscar Simms rented Room 427. By this time, Oscar Simms had returned and told police that he did not know who was in the room. Mr. Simms then told a person inside Room 427 to open the door. The person responded that he was not going to open the door because the police were outside. With consent of both Mr. Simms and the motel management, the police forced open the door and found Petitioner inside, looking surprised. A search uncovered five grams of marijuana in Petitioner's front pocket and a white powdery residue on a photo. The search of Room 202 uncovered drug paraphernalia and newly purchased merchandise.

Because of the February 22nd and 27th drug sales, Petitioner was charged with two counts of delivering cocaine, MCL 3337401(2)(a)(iv). Defendant denied the charges and presented a witness who claimed that Petitioner was with him in Ohio on February 27th. The witness, Henry Dishmon, was Petitioner's sister's ex-husband, who admitted that he is still friends with Petitioner. Although Mr. Dishmon clearly remembered that Petitioner was with him in Ohio on the 27th, the witness could not recall what he did before or after the trip. During cross examination of Mr. Dishmon, the following dialogue took place:

> Q: All right. If you heard that he had been dealing in drugs would that surprise you?
> A: No, it wouldn't surprise me.
> Q: Why is that?
> A: 'Cause he's been accused of it, you know. He's been accused of it.
> Q: Is that something that's a big deal to you? Being accused of dealing drugs?
> A: Yes, it would be a big deal to anyone being accused of something of that nature. That's a pretty stiff sentence.
> Q: You've been in that situation yourself?

6

A: I've been accused of it. Yes, I have.
Q: In fact, you've pled guilty to it.
A: Yes, I did.
Q. In this country.
A: Yes, I did.
Q: You pled guilty to delivering heroin to an undercover officer back in 1999, isn't that correct?
A: That's over seven years ago. Yes, I did.
Q: Yes, you did. And in fact, you also pled on a separate case to possessing controlled substance under twenty-five grams, is that correct?
A: That was uh -yes, I did.
Q: So you've been in the same situation that Frederick Dixon's in right now?
A: Yes, I have.

Petitioner also called probation agent Rodney Pollard to the stand. Mr. Pollard testified that Joletta King stayed out 27 minutes past her curfew on February 22nd, the night officer Ried observed her in the hotel room while Petitioner sold him cocaine. When Petitioner testified, he admitted to associating with Ms. King, but denied being at Room 427 on February 22nd. Petitioner also commented on Rodney Pollard's credibility, stating that he had lied in a presentence report tor one of his prior convictions:

I had a Cobbs Agreement with Judge Shelton here [for a fleeing and eluding charge]. And Mr. Pollard was the pre-sentence investigator on that particular case. And he did a pre-sentence investigation report that was, that was real, real, real ugly and untruthful and he was - was trying to recommend that Judge Shelton not honor the Cobbs Agreement and send me to prison four to fifteen years.

In response to this statement, the following dialogue took place on cross-examination:

Q. Mr. Dixon, you said that you had a prior relationship with Rodney Pollard. Is that correct?
A. Yes, I did.
Q. You said that you were sentenced by Judge Shelton and Rodney Pollard was a  probation officer. Is that correct?
A. That's right.
Q. And you said that Rodney Pollard wrote an untruthful recommendation for sentencing -
A. Right.
Q. - is that correct?

7

A. Right.

Q. What was untruthful about it? Was it the fact that you had six prior felony convictions for Robbery, Assault with a Dangerous Weapon, Larceny? Resisting Police? Fleeing and Eluding Police? Unarmed Robbery? Is that what was untruthful about the recommendation?

A. What you talking about Mr. Prosecution (sic) is charges that over thirty almost thirty years old. You know.

Q. Some of them.

A. Prior to that, I hadn't had a felony conviction in eighteen years prior to the Fleeing and Eluding charge that Mr. Pollard had the, the report. What I'm referring to is Mr. Pollard was -had gossip, rumors and suspicion in the things that I had never been convicted of, but just information that he alleged that he had got (sic) from different law enforcement officers. That was the issue and the problem. And in fact, Judge Shelton had axed them (sic) to strike some of the information, some of the stuff that he had had (sic) in the pre-sentence investigation report.

Q. Right. Now you said some of your convictions are from thirty years ago, and that's true, but you had Assault with a Dangerous Weapon conviction from twenty years ago. You had Larceny in a Building from twenty years ago.

A. Right.

        [Defense Objection Overruled]

Q. [... ] You had Resisting Police from 2004. That's a felony.

A. Yeah.

Q. Correct?

A. Right.

Q. You had Fleeing the police from 2002, and that's a felony, too.

A. Right.

Q. Right. So you can say that some of those felonies where thirty years ago, but some of 'em were five years ago.

While on the stand, Petitioner also admitted to being in Room 427 on February 23rd, but claimed he was only there to buy marijuana—despite the fact that he had written a letter to police stating that all of his personal possessions had been in the room.

Petitioner arrived 1 hour and 15 minutes late to the first day of his trial. The trial court told Petitioner that it would deal with the matter at the end of the day. Once the jury was excused for the day, Petitioner's bond was revoked as a result of his tardiness and the court officers took him to jail.

Near the end of the day, the trial court allowed a 12 minute recess in place so that Petitioner and his attorney could go out into the hall and discuss whether Petitioner should testify. During this recess, some court officers entered the courtroom carrying shackles. Petitioner was never placed in shackles in the presence

8

of the jury.

Answer, at 5-10; *see also*, Def.-Appellant's Br. on Appeal, in *People v. Dixon*, No. 285637 (Mich.

Ct. App.), at 1-7.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>        (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>        (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements

10

of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Presence of Deputies with Shackles (Claim I)*

        In his first claim, petitioner contends that he was denied a fair trial when two deputies entered the courtroom "dangling" shackles and remained in the courtroom throughout his testimony. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

        1.      *Clearly Established Law*

        "The criminal process presumes that a defendant is innocent until proved guilty."  *United States v. Larson*, 460 F.3d 1200, 1214 (9th Cir. 2006) (citing *Deck v. Missouri*, 544 U.S. 622, 630 (2005); *Estelle v. Williams*, 425 U.S. 501, 503 (1976)), *vacated in part on other grounds on reh'g en banc*, 495 F.3d 1094 (9th Cir. 2007).  For this reason, "the Constitution prohibits any courtroom arrangement or procedure that 'undermines the presumption of innocence and the related fairness of the factfinding process.'"  *Larson*, 460 F.3d at 1214 (quoting *Deck*, 544 U.S. at 630).  The Supreme Court's cases "demontrate that [a court's] core concern in this area is to avoid any procedure that undermines the presumption of innocence by conveying a message to the jury that the defendant is guilty."  *Larson*, 460 F.3d at 1215.  The task for a reviewing court is determine whether "an unacceptable risk is presented of impermissible factors coming into play."  *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986) (internal quotation omitted).  The question is whether the courtroom arrangement was so inherently prejudicial that it branded the defendant with an

11

"unmistakable mark of guilt." *See id.* at 571. An inherently prejudicial courtroom arrangement must be justified by an essential state interest; however, an arrangement which is not inherently prejudicial need not be justified by any state interest. *See Larson*, 460 F.3d at 1216. Appearing in shackles or similar restrains before the jury is inherently prejudicial, and "[t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Deck*, 544 U.S. at 626. The Court held in *Deck* that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Such a determination may of course take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial." *Id.* at 629.

Where inherently prejudicial courtroom appearance such as shackling is not involved, however, a defendant is entitled to relief only if the courtroom arrangements caused actual prejudice. As the Court explained in *Holbrook*:

> All a federal court may do in such a situation is look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over.

*Holbrook*, 475 U.S. at 572.

2.    *Analysis*

Petitioner contends that he was denied a fair trial when two deputies, in addition to the regular security personnel already in the courtroom, entered the courtroom "dangling" shackles, and remained in the courtroom throughout his testimony. The Michigan Court of Appeals rejected this

claim, reasoning that petitioner "was not shackled during trial," and that petitioner "and his attorney were outside the courtroom when officers entered and the jury never observed the officers approach" petitioner. *Dixon*, 2009 WL 3323253, at *1. This determination was reasonable.

With respect to the mere fact of the presence of additional officers, petitioner cannot show that the Michigan Court of Appeals's decision was contrary to, or an unreasonable application of, clearly established federal law. "The Supreme Court has never held that a trial court's decision to have extra deputies stand guard at a trial unfairly prejudices the jury against a criminal defendant." *Hughley v. Grounds*, No. CV 10-9870, 2011 WL 7115955, at *3 (Oct. 17, 2011) (citing *Williams v. Woodford*, 384 F.3d 567, 588-89 (9th Cir. 2004) (holding that presence at trial of four uniformed marshals and additional plain clothes marshals did not deprive petitioner of constitutional right to fair trial)), *magistrate judge's report adopted*, 2012 WL 273886 (C.D.Cal. Jan 27, 2012); *see also*, *Wilkens v. Lafler*, ___ Fed. Appx. ___, ___, 2012 WL 2686101, at *6 (6th Cir. July 6, 2012) (presence of department of corrections guards near defendant not inherently prejudicial); *cf. Holbrook*, 475 U.S. at 568-69 (conspicuous and noticeable deployment of security personnel in courtroom is not inherently prejudicial). Nor has petitioner offered anything to show that the mere presence of two additional officers created an "unacceptable risk" that petitioner's right to a fair trial would be violated. *See Holbrook*, 475 U.S. at 570, 572. The additional officers were present in the courtroom for only a short portion of the trial, and did not have any interaction with petitioner in front of the jury.

Likewise, petitioner cannot show that he was denied a fair trial by the fact that one of the officers was holding shackles. *Deck* and its predecessors hold unconstitutional the routine use of "'visible restraints at trial.'" *Earhart v. Konteh*, 589 F.3d 337, 348 (6th Cir. 2009) (quoting *Mendoza*

*v. Berghuis*, 544 F.3d 650, 654 (6th Cir. 2008)).  Thus, for example, observation of a defendant by a juror while the defendant is being transported to or from the courtroom is not inherently prejudicial.  "Restraining a defendant in the courtroom, and restraining him during transport there, are two very different things."  *Mendoza*, 544 F.3d at 655; *see also*, *United States v. Waldon*, 206 F.3d 597, 607-08 (6th Cir. 2000).  Even under *Deck*, where a defendant is shackled in such a way that it is not visible to the jury, or where the jury briefly sees the defendant in shackles during transport to and from the courtroom, there is no denial of a fair trial.  *See Williams*, 384 F.3d at 592-93 (compiling cases).  The shackles at issue here had even less potential for prejudice than the shackles at issue in those cases.  Here, there is no claim that any juror ever saw petitioner in shackles.  They were merely being held by one of the security officers present in the courtroom. Petitioner has cited, and I have found, no case suggesting that the mere presence of shackles in the courtroom constitutes a denial of due process.   Accordingly, petitioner cannot show that the Michigan Court of Appeals's rejection of his claim was contrary to, or involved an unreasonable application of, clearly established federal law, and he is not entitled to habeas relief on this claim.

E.    *Judicial Bias (Claim II)*

        Petitioner next contends that the trial judge was biased against him.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

---

        [2]Respondent contends that this claim and petitioner's seventh claim challenging the use of prior convictions for impeachment were not properly exhausted and that the failure to exhaust these claims renders them procedurally defaulted.  While procedural issues in a habeas case should ordinarily be resolved first, neither exhaustion nor procedural default is jurisdictional, and "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995); *cf. Granberry v. Greer*, 481 U.S. 129, 135 (1987)

1.      *Clearly Established Law*

Perhaps "[n]o right is more fundamental to the notion of a fair trial than the right to an impartial judge." *Bracy v. Gramley*, 81 F.3d 684, 696 (7th Cir. 1996) (Rovner, J., dissenting), *rev'd*, 520 U.S. 899 (1997); *see also*, MASS. CONST. of 1780, pt. 1, art. 29.  Thus, "the Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 904-05 (citation omitted) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)).  "Because judicial bias infects the entire trial process it is not subject to harmless error review." *Maurino v. Johnson*, 210 F.3d 638, 645 (6th Cir. 2000) (citing *Chapman v. California*, 386 U.S. 18, 23 & n. 8 (1966)); *see also*, *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Tumey v. Ohio*, 273 U.S. 510 (1927)).

Habeas relief on the basis of judicial bias is appropriate only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995).  As a general matter, habeas relief will be appropriate only upon a showing that the trial judge was actually biased or prejudiced against the petitioner.  *See Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). However, in exceptional circumstances "the likelihood of bias or appearance of bias can, in certain circumstances, be so substantial as to create a conclusive presumption of actual bias." *Id*. (internal quotation omitted).  The appearance of bias situation is limited to cases in which "a judge is faced with circumstances that present some actual incentive to find one way or the other[,]" *id*. (internal quotation omitted); *see also*, *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th

(court may dismiss unexhausted petition on the merits if that course serves judicial economy); 28 U.S.C. § 2254(b)(2) (authorizing court to dismiss unexhausted claims on the merits).  Because it is clear that these claims are without merit, the Court may deny them on this basis without resolving respondent's exhaustion and procedural default arguments.

15

Cir. 1994) (en banc), such as where the judge has a pecuniary interest in the outcome or has been the target of repeated abuse by one of the parties. *See Six v. Delo*, 885 F. Supp. 1265, 1271 (E.D. Mo. 1995), *aff'd*, 94 F.3d 469, 478 (8th Cir. 1996).

As the Supreme Court has noted in the context of the federal recusal statute, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *see also*, *Liteky v. United States*, 510 U.S. 540, 549-51 (1994); *Browning v. Foltz*, 837 F.2d 276, 279 (6th Cir. 1988). For this reason,

> judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved.

*Liteky*, 510 U.S. at 555. Thus, "[a] judge's ordinary efforts at courtroom administration–even a stern and short-tempered judge's ordinary efforts at courtroom administration–remain immune." *Id*. at 556. Although *Liteky* was decided on the basis of the federal recusal statute, it provides guidance for resolving habeas claims of judicial bias. *See Maurino*, 210 F.3d at 645; *Poland v. Stewart*, 117 F.3d 1094, 1103-04 (9th Cir. 1997).

2.    *Analysis*

Petitioner contends that the trial judge was biased against him, as evidenced by the judge's actions in: (1) revoking his bond when he was justifiably late for court; (2) having additional deputies come to the courtroom; (3) "coming to the rescue" of Detective Ried during counsel's cross-examination; (4) not allowing him a recess to speak with counsel about the decision to testify; and (5) allowing the prosecution to impeach with stale prior convictions. Petitioner also contends

16

that when the initially assigned trial judge granted petitioner's motion to disqualify, the successor judge who presided over his trial was "hand-picked" by the recusing judge, rather than selected by blind draw. The Michigan Court of Appeals rejected this claim, concluding that his allegations were "unsupported." *Dixon*, 2009 WL 3323253, at *4. Specifically, the court explained that "[o]ther than his bare assertion, defendant offers no evidence that the reassigned judge was 'hand-picked;'" "there is no indication in the record that the trial court's conduct [in revoking petitioner's bond] was biased;" "the record reflects that the trial judge merely took a lunch recess at a convenient stopping point when defense counsel needed to set up an exhibit;" and "[d]efendant and his counsel conferred in the hallway for ten minutes while the trial court 'recessed in place,' and nothing was said in court in their absence." *Id*. The Court should conclude that the court of appeals's rejection of this claim was reasonable.

As noted above, to require recusal, "the judge's prejudice or bias must be personal or extrajudicial." *United States v. Jamieson*, 427 F.3d 394, 405 (6th Cir. 2005) (citing *United States v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999)). "'Personal bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases.'" *Id*. (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2003). Petitioner does not point to any personal bias against petitioner derived from any extrajudicial source. Rather, he complains only of various decisions made by the trial judge in conducting the trial. As noted above "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Likewise, petitioner has pointed to no evidence, other than his own assertion, that the successor judge who presided over his trial was "hand-picked" by the recusing judge. And even if he had such evidence, that alone would not entitle him to habeas relief. It is well established that "a defendant

17

does not have a right to have his case heard by a particular judge," nor does a defendant "have the right to have his judge selected at random by a draw." *Sinito v. United States*, 750 F.2d 512, 515 (6th Cir. 1984); *accord United States v. Pearson*, 203 F.3d 1243, 1256-57 (10th Cir. 2000); *United States v. Gallo*, 763 F.2d 1504, 1531 (6th Cir. 1985); *United States v. Edwards*, 39 F. Supp. 2d 692, 707-08 & nn. 46-48 (M.D. La. 1999) (discussing cases). Because petitioner has pointed to nothing showing that the trial judge had a personal bias against him stemming from an extrajudicial source, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Failure to Disclose Identity of Informant (Claim III)*

Petitioner next contends that the prosecution improperly suppressed exculpatory evidence by failing to disclose the identity of a confidential informant. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v.*

18

*Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. Further, although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

In *Roviaro v. United States*, 353 U.S. 53 (1957), the Court held, after discussing the history of the confidential informer privilege, that "[w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id*. at 60. A court faced with the issue must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id*. at 62. "The burden is on the individual seeking disclosure of a confidential informant . . . to show the need for disclosure." *Emmons v. McLaughlin*, 874 F.2d 351, 357 (6th Cir. 1989).

2.    *Analysis*

Petitioner contends that he was denied a fair trial because the prosecution never disclosed that an informant was involved in the case. This information was not disclosed, petitioner asserts, until Detective Ried testified at trial. The court of appeals rejected this claim, reasoning that the affidavit petitioner attached to his motion for new trial "reveals that he knew of the existence of the informant and even resided with him for a period of time." *Dixon*, 2009 WL 3323253, at *5. The Court should conclude that this determination was reasonable.

Petitioner has pointed to no evidence calling into question the court of appeals's conclusion, based on petitioner's own affidavit in support of his motion for new trial, that petitioner knew both

19

that an informant was involved and the identity of that informant.  It is well established that "[n]o *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (citations omitted) (internal quotation omitted); *accord United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994).  And because petitioner knew the identity of the informant and was not precluded by the trial court from calling him as a witness on the basis of the informant privilege–*Roviaro* is not implicated. *See United States v. Parker*, 836 F.2d 1080, 1083-84 (8th Cir. 1988); *United States v. Powers*, 572 F.2d 146, 153 (8th Cir. 1978); *United States v. The LaRouche Campaign*, 695 F. Supp. 1290, 1307 (D. Mass. 1988).

Further, even if petitioner first learned of the existence of an informant during Detective Ried's testimony, he cannot show a violation of *Brady*.  Because the purpose of *Brady* is to permit a defendant to put all exculpatory information before the jury, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal quotation omitted).  Even where "previously undisclosed evidence is disclosed . . . during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (internal quotation omitted); *accord Davis*, 306 F.3d at 421 ("Delay violates *Brady* only where the delay causes prejudice."); *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994). Here, once it was disclosed during trial that an informant was involved, petitioner could have moved to discover the identity of the informer under *Rovario*, sought a recess and attempted to subpoena the informer, or otherwise sought to explore the matter further.  Petitioner did not none

of these things.

And even if the existence and identity of the informer was suppressed within the meaning of *Brady*, petitioner must still show that the information suppressed by the prosecution was material and exculpatory to establish a *Brady* violation.  Thus, petitioner must show that the informant "was in possession of . . . exculpatory or otherwise helpful defense evidence."  *Lewis v. Adams*, No. 08-1325, 2009 WL 650420, at *16 (C.D. Cal. Mar. 11, 2009).  Petitioner speculates that the informant would have contradicted Ried and supported petitioner's testimony, but "mere speculation" is not sufficient to establish the materiality or the exculpatory nature of the allegedly suppressed evidence. *Wood v. Bartholomew*, 516 U.S. 1, 6 (1996).  In the absence of anything to suggest that the informant possessed material, exculpatory information, or that his testimony was necessary for an effective defense, petitioner cannot establish a constitutional violation based on the failure to disclose the informant's existence and identity.  *See Rhodes v. Ludwick*, No. 2:07-cv-15256, 2009 WL 2168326, at *7 (E.D. Mich. July 17, 2009) (Duggan, J.).  Because petitioner has failed to establish any of the three elements of his *Brady* claim, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Admission of Prior Convictions (Claim VII)*

Petitioner next contend that he was denied a fair trial by the improper admission of prior convictions for impeachment purposes.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional

violation.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994); *see also, Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings."  *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

    2.    *Analysis*

Petitioner contends that he was improperly impeached with convictions for assault, resisting arrest, and fleeing and eluding because these convictions did not involve an element of theft or

22

dishonesty, and that he was improperly impeached with prior convictions for robbery, unarmed robbery, and larceny in a building because more than 10 years had elapsed since those convictions or his release from confinement on those convictions. *See* MICH. R. EVID. 609. The Michigan Court of Appeals rejected petitioner's claim, concluding that the prior convictions were not introduced for impeachment under Rule 609. The court explained that petitioner himself "introduced evidence of his prior conviction for fleeing and eluding police during direct examination," and thus he could not claim error in its admission. *Dixon*, 2009 WL 3323253, at *3. With respect to the remaining convictions, the court explained that petitioner had asserted that information contained in a presentence report prepared by probation officer Rodney Pollard was inaccurate and that he was the subject of long-standing police animosity toward him based on his acquittal on a prior drug charge. *See id*. The court of appeals concluded that the evidence of petitioner's prior convictions was therefor "admissible because it was not offered to impeach defendant's credibility for truthfulness, but rather to rebut defendant's assertions regarding the veracity of others." *Id*. Petitioner cannot show that he was denied a fair trial by the introduction of this evidence.

Even if the state courts' lack of compliance with the Michigan Rules of Evidence provided a basis for habeas relief, petitioner has failed to show such a lack of compliance. Rule 609, by its terms, governs admissibility of prior convictions for purposes of impeachment; it has no applicability when prior convictions are introduced for a purpose other than general impeachment of a witness's testimony. *See People v. Taylor*, 422 Mich. 407, 414, 373 N.W.2d 579, 582 (1985) ("It remains within the trial court's discretion to admit at any time during the course of a trial evidence of prior convictions, notwithstanding a ruling to exclude such evidence under MRE 609, if it is being offered for some proper purpose other than to impeach a defendant's credibility in

23

2:11-cv-10816-GER-PJK   Doc # 14   Filed 11/21/12   Pg 24 of 38   Pg ID 446

general."[3]  Specifically, the *Taylor* court noted that Rule 609 "was not intended to apply where evidence of prior convictions is offered to rebut specific statements of the defendant who testifies at trial."  *Id.* (citing *United States v. Johnson*, 542 F.2d 230, 234-235 (5th Cir. 1976)).  Here, petitioner claimed that Pollard lied in his prior presentence report, and that the police bore animosity toward him.  Petitioner's prior convictions were relevant to these claims, and the prosecutor was permitted to explore them in cross-examining petitioner.  Further, even if there was error in the admission of this evidence, petitioner cannot show that it deprived him of a fundamentally fair trial.  *See Shacks v. Tessmer*, 9 Fed. Appx. 344, 353 (6th Cir. 2001); *Amos v. Minnesota*, 849 F.2d 1070, 1073-74 (8th Cir. 1988).  *See generally*, *Butler v. Graham*, No. 07 Civ. 6586, 2008 WL 2388740, at *6 (S.D.N.Y. June 12, 2008) ("a state court's ruling as to the admissibility of evidence of prior convictions for impeachment purposes will rarely reach constitutional dimension."); *Jenkins v. Bara*, 663 F. Supp. 891, 899 (E.D.N.Y. 1987) ("[T]he admission of prior convictions for the purpose of impeaching the defendant has been characterized as evidentiary in nature and is therefore not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of constitutional magnitude.").  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Ineffective Assistance of Counsel (Claims IV & V)*

Petitioner next contends that his trial and appellate counsel were ineffective in several respects.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

---

[3]The federal courts similarly interpret Federal Rule of Evidence 609.  *See United States v. Gilmore*, 553 F.3d 266, 272-73 (3d Cir. 2009).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to: (1) investigate and call the informant; (2) treat Pollard as a hostile witness; (3) call Joletta King as a witness; and (4) investigate his claim that the prosecution resulted from police animosity toward him as a result of

26

his prior acquittal.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

### a.  Failure to Call Informant and King

Petitioner first contends that counsel was ineffective for failing to investigate and call the informant, and for failing to call Joletta King as an alibi witness.  The Michigan Court of Appeals rejected these claims.  With respect to the informant, the court reasoned that "[t]he record reflects that defense counsel was made aware of the informant," but "[b]ased on defendant's explanation that he arranged a purchase of cocaine with the informant, it was a sound strategic decision for defense counsel not to call the informant." *Dixon*, 2009 WL 3323253, at *5.  With respect to King, the court reasoned that "counsel explained that he repeatedly attempted to contact defendant regarding alibi witnesses, but defendant failed to return his calls or provide information." *Id*.  The Court should conclude that these determinations were reasonable.

Counsel's strategic decisions regarding what witnesses to call at trial are "virtually unchallengeable." *Awkal v. Mitchell*, 613 F.3d 629, 641 (6th Cir. 2010).  The Court's "concern is not to decide, using hindsight, what [it] think[s] would have been the *best* approach at trial.  Instead, [the Court] consider[s] only if the approach ultimately taken was within 'the wide range of reasonable professional assistance' given the circumstances." *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689).  Here, counsel could have made a reasonable strategic decision not to call the informant, in light of petitioner's explanation that he had previously engaged in a drug transaction with the informant. *See* Pet., Ground Four-Attachment. Likewise, petitioner cannot show that counsel was ineffective in failing to call King.  As the court of appeals observed, the record reveals that counsel repeatedly attempted to contact petitioner to

27

obtain the names of petitioner's alibi witnesses before the deadline for filing a witness list passed, and that counsel never received this information from petitioner. *See* Trial Tr., Vol. II, at 62-63. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691.

Further, as explained above, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Here, petitioner has presented no testimony, through affidavit or otherwise, regarding the substance of any testimony that the informant or King could have provided at trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Properly Examine Pollard

Petitioner next contends that counsel was ineffective in his handling of probation officer Rodney Pollard. Petitioner called Pollard as a defense witness to testify that King was on an electronic tether and was not at the hotel as claimed by Detective Ried. At trial, however, Pollard actually testified that King was not at home from 6:30 to 10:47 p.m., except for a one minute period at around 8:15 p.m. *See* Trial Tr., Vol. I, at 263-64. At the conclusion of the testimony that day, counsel informed the court:

28

I would like to put one last thing on the record, and my client wanted to stand up and say it. But I tell you what? Your Honor, I had several discussions with Mr. Pollard and every time I talked to Mr. Rodney Pollard he told me that Joletta King was only allowed to go out between three and five that day. She had an interview at the Red Lobster hotel -restaurant. I had -or, or Red Roof Inn. I talked to him several times, and this is the very first time that this ever came up, and I even talked to him today, this morning. so this whole thing about the six-thirty–and I put this on the record for my client–this whole six-thirty to ten-thirty stuff was – it was contradicted [by] everything the man had ever told me for the past two months.

*Id*. at 306-07.

To the extent petitioner contends that counsel was ineffective for his initial decision to call Pollard, petitioner cannot show that counsel's decision was unreasonable. Counsel had an official of the government whom he had every reason to believe would provide testimony that contradicted that of the key police witness. Apart from his allegation that he told counsel that Pollard was part of the grand conspiracy to get back at him for his acquittal in a case ten years earlier, petitioner offers nothing to suggest that counsel was unreasonable in believing that Pollard would testify that King was not at the motel as indicated by Detective Ried. To the extent petitioner contends counsel should have more vigorously questioned Pollard after he gave his testimony at trial, petitioner does not point to any specific lines of attack counsel should have pursued. Counsel could have attempted to cross-examine Pollard regarding his prior inconsistent statements, *see* MICH. R. EVID. 613, but because these statements were made to counsel himself such a strategy would have risked turning counsel into a witness, subjecting him to disqualification. *See Ciak v. United States*, 59 F.3d 296, 304-05 (2d Cir. 1995), *abrogated in part on other grounds by Mickens v. Taylor*, 535 U.S. 162, 170 n.3 (2002); *United States v. Conji*, 420 F. Supp. 2d 124, 129-30 (W.D.N.Y. 2005). Further, petitioner has not explained how he was prejudiced by counsel's failure. Counsel pursued this matter in his questioning of petitioner, informing the jury that Pollard's testimony was the first time

29

he had ever indicated that King was out after 6:30 p.m.  *See* Trial Tr., Vol. I, at 268.  Further, even if counsel had attempted to impeach Pollard, petitioner has provided no reason to believe that such impeachment would have created a reasonable probability of a different result, as it was a collateral matter to Ried's primary testimony that he purchased cocaine from petitioner.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c.  Failure to Investigate

Finally, petitioner contends that counsel was ineffective for failing to investigate his claim that the police and prosecutor were motivated to frame him because he had been acquitted in a 1997 drug case.  The Michigan Court of Appeals rejected this claim, reasoning that "[t]he record reveals that defense counsel investigated this allegation before trial by requesting and reviewing discovery materials, but found no proof of a conspiracy."  *Dixon*, 2009 WL 3323253, at *6.  This determination was reasonable.  The record reveals that counsel sought discovery related to this claim, including disciplinary records and records of any funds that may have been allocated by the Ann Arbor city counsel for the purpose of investigating petitioner.  *See* Trial Tr., Vol. II, at 62-64.  Further, counsel elicited from petitioner the facts regarding his prior case and the alleged police animosity toward him, *see id*., Vol. I, at 293-94, 295, and made this point to the jury during closing argument, *see id*., Vol. II, at 22.  It is thus clear that counsel was aware of and investigated petitioner's claim that he was the victim of a police conspiracy.  That counsel's investigation failed to uncover any evidence supporting this claim does not mean that counsel's investigation was inadequate; there is simply no basis to conclude that any such evidence exists.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Appellate Counsel*

Petitioner also contends that his appellate counsel was ineffective for failing to meet with him and present his *pro se* claims on direct appeal.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

In evaluating the performance of appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing  *Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id.*  As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id.* (quoting  *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal.  *See id.* at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

Here, appellate counsel raised four significant issues on directly appeal.  As noted above, petitioner's *pro se* claims are without merit, and thus he cannot show either that the claims counsel failed to include were clearly stronger than the claims counsel raised, or that he was prejudiced by counsel's failure to raise the claims.  This is particularly so in light of the fact that petitioner raised these claims himself in his *pro se* brief and the court of appeals rejected them on the merits.  *See Linnen v. Poole*, 766 F. Supp. 2d 427, 476 (W.D.N.Y. 2011).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

31

I.   *Evidentiary Hearing (Claim VI)*

Finally, petitioner contends that the court of appeals erred in denying his motion to remand

for an evidentiary hearing.  It is not clear whether petitioner is raising this claim as an independent

basis for relief, or is merely seeking an evidentiary hearing in this Court.  In either event, the claim

is without merit.

    1.   *State Court's Failure to Grant Evidentiary Hearing*

Nothing in the Constitution requires a state to establish a system of postconviction review, and thus

"an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable

in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal

quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele*

*v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th

Cir. 1992)).  As the Sixth Circuit has explained:

> [T]he Sixth Circuit has consistently held that errors in post-conviction
> proceedings are outside the scope of federal habeas corpus review. *See Kirby v.*
> *Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th
> Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings
> "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254,"
> because " 'the essence of habeas corpus is an attack by a person in custody upon the
> legality of that custody, and ... the traditional function of the writ is to secure release
> from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411
> U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v.*
> *Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no
> obligation to provide this avenue of relief, and when they do, the fundamental
> fairness mandated by the Due Process Clause does not require that the State supply
> a lawyer as well." (citation omitted)). A due process claim related to collateral
> post-conviction proceedings, even if resolved in a petitioner's favor, would not
> "result [in] . . . release or a reduction in . . . time to be served or in any other way
> affect his detention because we would not be reviewing any matter directly
> pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in"
> a case alleging post-conviction error "is release from confinement, the result of
> habeas review of the specific issue[ ] ... is not in any way related to the
> confinement." *Id*. at 248. Accordingly, we have held repeatedly that "the scope of the

> writ [does not] reach this second tier of complaints about deficiencies in state
> post-conviction proceedings," noting that "the writ is not the proper means" to
> challenge "collateral matters" as opposed to "the underlying state conviction giving
> rise to the prisoner's incarceration." *Id*. at 248, 247; *see also Alley v. Bell*, 307 F.3d
> 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings
> can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at
> 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot
> be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). Thus neither the trial court's failure to hold an

evidentiary hearing nor the court of appeals's failure to remand the matter for that purpose, even if

erroneous under state law, entitles petitioner to habeas relief. *See Chaussard v. Fulcomer*, 816 F.2d

925, 932 (3d Cir. 1987); *Edwards v. State of Kansas*, 751 F. Supp. 197, 199 (D. Kan. 1990).

2.    *Evidentiary Hearing in This Court*

To the extent petitioner seeks an evidentiary hearing here, the court should conclude that one

is not necessary. In addressing whether an evidentiary hearing is appropriate in a habeas corpus

case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule

8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll.

§ 2254; and (2) is a hearing permitted under 28 U.S.C. § 2254(e)(2). In deciding whether an

evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing

would be meaningful, in that a new hearing would have the potential to advance the petitioner's

claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152

F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986)

(applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme

Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must
> consider whether such a hearing could enable an applicant to prove the petition's
> factual allegations, which, if true, would entitle the applicant to federal habeas relief.

33

> Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
>
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted).

Here, petitioner contends that an evidentiary hearing is necessary to discover the facts surrounding the deputies' entry into the courtroom with the shackles. However, in light of the law applicable to this claim, petitioner offers nothing but speculation that such a hearing would uncover evidence advancing his claim that the courtroom atmosphere was such that he was denied a fair trial. The habeas rules "do[] not . . . authorize fishing expeditions. A habeas petitioner must make sufficiently specific factual allegations; conclusory allegations will not suffice to mandate either discovery or a hearing." *Harris v. Johnson*, 81 F.3d 535, 540 (5th Cir. 1996). Petitioner's "'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring . . . an evidentiary hearing.'" *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)).

Moreover, an evidentiary hearing would not have the potential to advance petitioner's claims because no facts developed at an evidentiary hearing would be relevant to whether the Michigan Court of Appeals reached an unreasonable determination with respect to petitioner's claim under § 2254(d)(1). In *Cullen v. Pinholster*, 131 S. Ct. 1388, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C. section 2254(d)(1)–whether the state court determination was contrary to or an unreasonable application of established federal law–must be confined to the record that was before the state court. *See Pinholster*, 131 S. Ct. at 1398. The *Pinholster* Court specifically found that the district court

34

should not have held an evidentiary hearing regarding Pinholster's claims until after the Court determined that the petition survived review under § 2254(d)(1). *See id.*  Thus, even if this Court granted an evidentiary hearing, because each of petitioner's claims was adjudicated on the merits by the Michigan Court of Appeals the Court would have to "disregard [any] newly obtained evidence." *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012).  Thus, in light of *Pinholster*, an evidentiary hearing is not appropriate. *See King v. Booker*, No. 2:11-CV-13676, 2012 WL 3597655, at *1 (E.D. Mich. Aug. 21, 2012) (Roberts, J.).

J.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason;

35

that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. As explained above, the presence of security officers in the courtroom did not deprive petitioner of a

36

fair trial, and the mere presence of shackles in the courtroom, with no evidence that any juror every saw petitioner shackled, fails to establish a constitutional violation. Thus, the resolution of this claim is not reasonably debatable. Because there is no evidence that the judge was biased against petitioner, the resolution of petitioner's judicial bias claim is not reasonably debatable. Likewise, the resolution of petitioner's *Brady* claim is not reasonably debatable in light of the fact that petitioner knew the identity of the informant and petitioner's failure to suggest any exculpatory evidence that the informant could have provided. Because petitioner's impeachment evidence and evidentiary hearing claims raise issues of state law not cognizable on habeas review, the resolution of these claims is not reasonable debatable. Finally, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable for the reasons discussed above. Accordingly, the Court should deny petitioner a certificate of appealability.

K.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Courts should also deny petitioner a certificate of appealability.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of

objections which raise some issues but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health*

*& Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local*

*231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 11/21/12


> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on November 21, 2012.
>
> s/Eddrey Butts
> Case Manager